IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON QUIROZ,<br><br>        Plaintiff.<br><br>  v.<br><br>VALLEY FORGE INSURANCE COMPANY, et al.,<br><br>        Defendants.<br>_____ | No. C 05-2025 SBA<br><br>**ORDER**<br><br>[Docket No. 8] |

This matter comes before the Court on Plaintiff Ramon Quiroz's Motion to Remand [Docket No. 8]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Plaintiff's Motion for Remand [Docket No. 8].

**BACKGROUND**

**A.     Factual Background**

    **1.     Parties**

Plaintiff Ramon Quiroz ("Quiroz") is a resident and citizen of Alameda County, California. Compl. at ¶ 1. Defendant Valley Forge Life Insurance Company ("Valley Forge") is a corporation duly organized and existing under and by virtue of the laws of Pennsylvania, with its principal place of business in Chicago, Illinois. *Id.* ¶ 2. Valley Forge was a wholly owned subsidiary of CNA Financial Corporation until approximately 2004, when CNA Financial Corporation sold Valley Forge to Swiss Re Life & Health America Inc. *Id.* Defendant Mark Jun Xing Jeng ("Jeng") is a resident and citizen of California. *Id.* ¶ 3. At all times relevant to the instant action, Zeng was an agent for CNA Financial Corporation and/or Valley Forge. *Id.*

    **2.     Allegations of the Complaint**

On or about August 2002, Zeng began pursuing Quiroz for the purpose of selling him life and disability insurance, as well as a living trust. Compl. at ¶ 6. When Zeng made contact with Quiroz, he represented that he was an expert in financial planning and recommended that Quiroz purchase life and disability insurance to cover his mortgage and to protect his wife in the event that Quiroz died or became disabled. *Id.* Zeng represented that CNA Financial was a great company and that Quiroz should purchase life insurance in the amount of $278,000, which was the amount of Quiroz's mortgage, in addition to disability insurance with a monthly disability benefit of $2,300. *Id.* Zeng was persistent and persuasive. *Id.* Zeng eventually succeeded in persuading Quiroz to apply for the recommended insurance. *Id.*

In September 2002, Zeng brought an insurance application for insurance to Quiroz's house. *Id.* ¶ 7. After asking Quiroz questions, Zeng filled out an application dated September 11, 2002 (the "September 2002 application") and submitted it to Continental Assurance Company, a wholly-owned subsidiary of CNA. *Id.* The September 2002 application noted that, in the past ten years, Quiroz had been treated for or had headaches, high blood pressure, and allergies. *Id.* The September 2002 application also noted that Quiroz had quit smoking in 1995 after smoking for approximately seven years. *Id.* As part of the application process, Quiroz underwent a paramedic examination wherein a doctor or nurse came to Quiroz's home, took his blood pressure, obtained a blood sample, and obtained further information from Quiroz. *Id.* at ¶ 8.

At some point during the following weeks, Zeng informed Quiroz that his September 2002 application had been denied by Continental Assurance Company. *Id.* ¶ 9. However, Zeng informed Quiroz that he was going to submit a new application to another CNA subsidiary, Valley Forge. *Id.* Subsequently, Zeng submitted an application dated October 4, 2002 (the "October 2002 application") to Valley Forge. *Id.* Unbeknownst to Quiroz, the Valley Forge application omitted health information that Quiroz previously told Zeng, some of which had been contained in the September 2002 application. *Id.* Zeng then informed Quiroz that Valley Forge had approved his application, and that Quiroz had been issued an insurance policy through Valley Forge Life Insurance Consumer Products Trust (hereinafter the "Policy"). *Id.* at ¶ 11. Believing he was insured, Quiroz began paying premiums pursuant to the terms of the Policy. *Id.* at ¶¶ 12, 15.

In July 2003, Quiroz was injured on the job. *Id.* ¶ 13. His injuries included two herniated discs in his back, pinched nerves, and pain radiating down his right leg. *Id.* at ¶ 13. Quiroz timely submitted a claim for

disability benefits under the Policy. *Id.* at ¶ 14. After submitting his claim, Quiroz called Valley Forge on several occasions seeking the status of his claim. *Id.* In response to each call, Quiroz was told that his claim was under investigation. *Id.*

On March 4, 2004, Deborah Watts, the Director of Underwriting for CNA, informed Quiroz that the insurance Policy had been rescinded due to certain misrepresentations that had been included in his application. *Id.* at ¶ 15. Specifically, the letter stated:

> Our investigation, however, has revealed that Dr. Gail Dressler, 2147 Mowry Ave. #D4, Freemont [*sic*], CA 94538 indicated in his notes 5-26-98 recovering alcoholic 1997, 6-17-98 back still hurts off and on, 9-24-98 chronic recurrent right shoulder pain and 11-19-98 to 10-8-02 depression.

*See* Answer to Compl. at Ex. 3. The letter further stated that: "Had we been given the correct answers to [certain questions] . . . on the Part II Medical Application, we would not have issued the policy." *Id.* Accordingly, CNA provided Quiroz with a refund of $1,980.72, which was intended to cover all of the premiums paid on the policy through March 2004. *Id.*

**B.     Procedural Background**

On February 28, 2005, Quiroz filed a Complaint against Valley Forge and Zeng in the Superior Court of Alameda County. In the Complaint, Quiroz alleges claims against Valley Forge for (1) breach of the duty of good faith and fair dealing and (2) breach of contract. Quiroz also alleges a claim against Zeng for professional negligence.

On May 18, 2005, Valley Forge filed a Notice of Removal in this Court. In the Notice of Removal, Circuit City alleges that jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1332 and 1441 because the parties are diverse and the amount in controversy exceeds $75,000. Although Valley Forge concedes that Defendant Zeng is a citizen of California, Valley Forge argues that Zeng's citizenship should be disregarded on the grounds that there is no possibility that Quiroz will be able to establish liability against Zeng. Quiroz filed the instant Motion to Remand on June 16, 2005.

## **LEGAL STANDARD**

Under 28 U.S.C. § 1332, a district court has original jurisdiction over a civil action where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is diversity of citizenship between the parties. 28 U.S.C. § 1332.

The federal removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court . . . may be removed by the defendant or the defendants" to federal court on the basis of federal question or diversity jurisdiction. 28 U.S.C. 1441(a); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977). The removal statute is to be strictly construed against removal and any doubt is resolved in favor of remand. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). The burden of establishing jurisdiction rests with the party effecting the removal. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted).

Removal of a civil action that alleges claims against a non-diverse defendant is proper where it appears that such defendant has been fraudulently joined. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). As a matter of general principle, however, courts generally employ a presumption against fraudulent joinder. *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 586 (C.D. Cal.1998) (citations omitted). Accordingly, the burden of proving fraudulent joinder is a heavy one. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983). The removing party must prove that there is absolutely *no* possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court. *Kruso v. Int'l Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). The Court need not determine whether the plaintiff will actually or even probably prevail on the merits, and must look only for the possibility that he may do so. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992). The failure to state a claim against the non-diverse defendant must be "obvious according to the well-settled rules of the state." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).

Where jurisdiction depends on a finding of fraudulent joinder, the removing defendant "is entitled to present the facts showing the joinder to be fraudulent." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.1998). However, in making its determination, the court must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.

*See Dodson*, 951 F.2d at 42.

## ANALYSIS

In the instant Motion to Remand, the sole issue in dispute is whether the citizenship of Zeng can properly be disregarded by this Court for the purpose of establishing diversity jurisdiction. The parties concede that Zeng and Plaintiff are both citizens of California, thereby potentially destroying complete diversity between the parties. However, Valley Forge argues that Zeng is merely a "sham" defendant and that there is no possibility that Quiroz can establish liability against him. Valley Forge's position is premised on two theories: (1) that Quiroz has not alleged sufficient facts to support the elements of his professional negligence claim against Zeng; and (2) that, under California law, an agent of a disclosed insurance company principal is not individually liable to the insured for actions conducted within the scope of the agency.

**A.   Sufficiency of the Complaint**

With respect to its first theory, Valley Forge argues that Quiroz has not sufficiently alleged facts in support of the elements of his professional negligence claim because "it is obvious from the Complaint and Defendant's March 4, 2004 rescission letter that there is no nexus between Mr. Zeng's alleged negligent acts (failing to properly or correctly disclose Mr. Quiroz' medical history) and the alleged harm (rescission)." Opp. at p. 10. Specifically, Valley Forge argues that the March 4, 2004 rescission was based on Quiroz's failure to disclose his "longstanding history of alcohol abuse and depression" and that Quiroz has not "alleged that he informed Mr. Zeng of his prior alcohol abuse or depression." *Id.* Valley Forge also argues that the sequence of events alleged in the Complaint are not supported by the exhibits attached to the Complaint. Valley Forge's sole support for this argument, however, is the fact that Quiroz appears to have mistakenly attached a document relating to a November 9, 2002 paramedic evaluation to his Complaint, rather than his September 2002 CNA application.

Valley Forge's arguments do not persuasively overcome the strong presumption in favor of remand. First, contrary to Valley Forge's assertion, it not "obvious" that there is no nexus between Zeng's allegedly negligent acts and the alleged harm. In fact, the Complaint plainly states that "[u]nbeknownst to Mr. Quiroz, the Valley Forge application omitted health information that Mr. Quiroz previously told Zeng, ***some of which*** was contained on the September 2002 application previously submitted to CNA." Compl. at ¶ 10 (emphasis

added). The Complaint also states that "there were no misrepresentations regarding Mr. Quiroz' medical history as Mr. Quiroz' health history was properly disclosed on either the Valley Forge application, the September 2002 application ***or to Valley Forge's agent, Zeng***." Compl. at ¶ 16 (emphasis added). In light of these allegations, Valley Forge's attempt to construe the Complaint as conclusively establishing that Quiroz did not disclose his history of alcoholism to Zeng is untenable.

Further, although Valley Forge appears to have correctly noted that Exhibit A to the Complaint is not the September 2002 application to Continental Assurance Company, it is not clear how this renders the remainder of the allegations in the Complaint "facially deficient," as Valley Forge contends. While a removing defendant is entitled to present facts showing the joinder of a non-diverse defendant to be fraudulent, *see Ritchey*, 139 F.3d at 1318, the only relevant fact that Valley Forge has presented to this Court in its Notice of Removal is the fact that Quiroz participated in a follow-up paramedic evaluation in connection with his Valley Forge application in November 2002. *See* Not. of Removal at p.3 n.1. This does not create a dispute of fact as to whether Zeng submitted an application to Continental Assurance Company on Quiroz's behalf in September 2002. Further, even if it did create a dispute of fact, this Court is required to resolve all disputed questions in favor of the non-removing party. *See Dodson*, 951 F.2d at 42. Accordingly, Valley Forge's arguments regarding the alleged deficiencies in Quiroz's Complaint are insufficient to support removal of this action to this Court.

### B.    Zeng's Individual Liability

With respect to its second theory, Valley Forge argues that Quiroz has no possibility of establishing a viable cause of action against Zeng because, under *Lippert v. Bailey*, 241 Cal. App. 2d 376, 382 (1966), an insurance agent whose principal is disclosed cannot be held individually liable to an insured. Valley Forge bases its argument on the fact that Quiroz has alleged in his Complaint that Zeng was an "agent of Defendants at the time he solicited and submitted Plaintiff's insurance applications to Defendants." Compl. at ¶ 3.

In response, Quiroz contends that, the holding of *Lippert* notwithstanding, an action for professional negligence can be maintained against Zeng on various theories, including: (1) that Zeng was a dual agent for both Quiroz and Valley Forge; (2) that Zeng owed a special duty toward Quiroz due to the fact that he represented to Quiroz that he was an expert in financial planning; and (3) that Zeng assumed a special duty

6

1  toward Quiroz when he failed to disclose certain essential medical information on the Valley Forge application
2  and misrepresented to Quiroz that the medical information was not material to Valley Forge.

It is generally true in California that an agent, when acting in the name of a disclosed principal, is not personally liable for negligence committed within the scope of his or her employment. *See Lippert,* 241 Cal.App.2d at 382. However, as Quiroz has correctly noted, California courts have recognized two separate "lines of exception" to the general *Lippert* rule: (1) the dual agency exception, and (2) the "special duty" exception. *See Macey v. Allstate Property and Casualty Insurance Co.*, 220 F.Supp.2d 1116, 1120 (N.D. Cal. 2002). Since Valley Forge is the removing party, it bears a heavy burden of conclusively establishing that neither exception applies here.

### 1. The Dual Agency Exception

Accordingly, the first issue to be resolved is whether it is obvious, under California law, that Plaintiff cannot possibly prevail on the theory that Zeng was acting as a "dual agent." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d at 761 (failure to state a claim against non-diverse defendant must be "obvious according to the well-settled rules of the state.").

In arguing that Quiroz cannot establish that Zeng was acting as a "dual agent," Valley Forge relies on *Charlin v. Allstate Ins. Co.*, 19 F.Supp.2d 1137, 1141 n.2 (C.D. Cal. 1998) and *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003). Valley Forge's reliance on these case is misplaced, however. For example, in *Charlin*, the district court concluded that the agent was not a dual agent after finding the plaintiff had not sufficiently alleged that the insurance agent, an employee of Allstate, had acted in any way beyond his capacity as an agent for the insurer. *Charlin*, 19 F.Supp.2d at 1141. Notably, the *Charlin* court was careful to distinguish its facts from those of *Eddy v. Sharp*, 199 Cal.App.3d 858, 856-66 (1988), a case in which the California Court of Appeals *did* find the existence of dual agency. *See Charlin*, 19 F.Supp.2d at 1141 (noting that the key distinguishing factors were that the agent "did not select Allstate as the one company among many for Plaintiff to insure with, nor did he undertake to prepare any proposals for Plaintiff."). Similarly, *Mercado*, which relies exclusively on the holding of *Charlin*, concludes – with relatively no analysis – that the insurance agent was not a dual agent merely because she "did not take on any additional duties for the benefit of [the plaintiff]." *Mercado*, 340 F.3d at 826 n. 1. The holdings of *Charlin* and *Mercado* are therefore quite limited

in applicability, and, as such, the Court finds that *Charlin* and *Mercado* do not compel the conclusion that Quiroz has no possibility of establishing dual agency.

Further, both *Charlin* and *Mercado* fail to acknowledge the holding of *Kurtz, Richards, Wilson & Co. v. Insurance Communicators*, 12 Cal. App. 4th 1249 (1993). In *Kurt*, after noting that "an insurance agent has a duty to use reasonable care, diligence, and judgment in producing the insurance requested by a client," the California Court of Appeals held that a superior court may not dismiss a cause of action against an agent if the complaint does not clearly state that the nature of the relationship between the agent and insurer was disclosed to the plaintiff. *Kurt*, 12 Cal.App.4th at 1257 ("demurrer was improperly granted, since the complaint does not allege that the relationship of ICMC and Hoge to Union was diclosed to KRW, but *only that it existed*.") (emphasis added). The holding of *Kurt* is highly significant here, where it is not clear from Plaintiff's complaint whether Zeng's relationship to Valley Forge was disclosed to Quiroz at the time he entered into the contractual relationship with Valley Forge.

Indeed, while it is true that Quiroz's Complaint states that Quiroz is currently "informed and believes" that Zeng was an agent of Valley Forge, the factual allegations do not establish that Zeng actually disclosed this to Quiroz. *See* Compl. at ¶ 6 (indicating that Zeng merely stated that CNA Financial was a "great company."). Further, contrary to Valley Forge's assertions, the Complaint does not foreclose the possibility that Zeng was acting as either an independent agent or in dual capacity as an agent for both Quiroz and Valley Forge. For example, significantly, the October 2002 application does *not* state that Zeng is affiliated with Valley Forge, but instead states that he is an agent of "Insurance Wholesalers." *See* Def's Answer at Ex. 3 (October 2002 application).[1] Additionally, numerous allegations in the Complaint suggest that Quiroz had reason to believe that Zeng was acting as his agent. Compl. at ¶¶ 6, 7, 9, 11. For example, the Complaint alleges that Zeng initiated contact with Quiroz and made several recommendations to Quiroz with respect to the scope of

---

[1] This fact further distinguishes the instant case from *Mercado* and makes it more closely analogous to *Eddy*. For example, in *Mercado*, the agent was clearly and unambiguously affiliated with only one company, Allstate, and was named in the complaint only because she was the agent responsible for handling the insurance claim. *Mercado*, 340 F.3d at 825. In contrast, in *Eddy*, the agent represented numerous insurance companies and was responsible for recommending a specific company's insurance policy to the plaintiffs. *Eddy*, 199 Cal.App.3d at 862. This difference is important because, as stated in *Eddy*, "[i]f an insurance agent is the agent for several companies and selects the company with which to place the insurance or insures with one of them according to directions," the insurance agent may also be properly considered to be the agent of the insured. *Id.* at 865.

coverage Quiroz would need; that Zeng recommended more than one CNA company to Quiroz; and that Zeng made certain recommendations with respect to what information should, or should not, be included in the insurance applications. *Id.* The Complaint also alleges that Quiroz relied upon the information Zeng provided, and that Quiroz believed that Zeng was engaged in "undertaking to obtain coverage for Plaintiff." *Id.* at ¶ 34.

It is therefore – at best – a disputed issue as to whether Zeng was acting as an agent for both Valley Forge and Quiroz. Since disputed issues are resolved in favor of remand, the Court concludes that Valley Forge has not met its burden of proof on this issue.

### 2. The "Special Duty" Exception

Valley Forge has also not established that the "special duty" exception does not apply. It is well established under California law that "[a]n insurance agent has an obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Butcher v. Truck Ins. Exchange*, 77 Cal. App. 4th 1442, 1461 (2000) (internal quotation omitted). Accordingly, "an agent's failure to deliver the agreed-upon coverage may constitute actionable negligence and the proximate cause of an injury." *Id.* at 1464 (holding insurer and agent may be held liable for negligent misrepresentation, where insurer's agent misled insureds into believing policy provided coverage for malicious prosecution); s*ee also Desai v. Farmers Ins. Exchange*, 47 Cal. App. 4th 1110 (1996) (holding agent may be held liable for agent's negligent representation that earthquake, fire and hazard insurance provided 100 percent replacement cost coverage); *Free v. Republic Ins. Co.*, 8 Cal. App. 4th 1726, 1729 (1992) (holding agent may be held liable for negligent representations regarding adequacy of coverage limits); *Paper Savers, Inc. v. Nasca*, 51 Cal.App. 4th 1090, 1095 (1996) (holding agent may be held liable for negligently representing the meaning and effect of "replacement cost coverage" endorsement).

While the general rule is that neither carriers nor their agent have an affirmative duty to offer advice about coverage or to make sure that an insured understands all of his options and/or is adequately insured, this general rule changes, and a duty in an agent arises, when any one of the following circumstances can be proved: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided, (b) there is a request or inquiry by the insured for a particular type or extent of coverage, or (c) the agent assumes an

9

additional duty by either express agreement or by "holding himself out" as having expertise in a given field of insurance being sought by the insured. *Fitzpatrick v. Hayes*, 57 Cal.App.4th 916 (1997); *see also Paper Savers*, 51 Cal.App.4th at 1096-1097 (holding that an agent may assume a duty toward the insured by misrepresenting the policy's terms or extent of coverage).

In the instant case, Quiroz alleges that Zeng "held himself out" as being an "expert in financial planning." Compl. at ¶ 6. Quiroz further contends that he believed Zeng to be such an expert, and relied upon Zeng to provide guidance as to: (1) the type of insurance policy he should obtain; (2) the type of information that would be material to an insurer in deciding whether a policy should issue. *Id.* at ¶¶ 6, 18, 34-39.

Additionally, Quiroz alleges that he fully disclosed his medical history to Zeng and that Zeng made certain misrepresentations to Quiroz regarding the significance of the information that was disclosed. *Id.* at ¶¶ 18-19. Quiroz also alleges that "Zeng[] led Mr. Quiroz to believe that any facts not on the Valley Forge application, but disclosed to Zeng, were not required, and/or material to the issuance of the subject insurance Policy." *Id.* at ¶ 18. Moreover, Quiroz contends that when his Continental Assurance Company application was rejected, Zeng, without engaging in any further consultations with Quiroz, took it upon himself to submit a new application to a different company, which application contained material representations regarding Quiroz's medical history. *Id.* at ¶¶ 9-10. As a result of Quiroz's conversations with Zeng, Quiroz contends that he was led to believe that his insurance policy was valid, and that Valley Forge would not have any basis to rescind the policy. *Id.* at ¶¶ 16-18, 37.

Due to the allegations in the Complaint regarding Zeng's alleged "financial expertise" and Zeng's fairly significant misrepresentations, it cannot be said with certainty that California courts would refuse to recognize a cause of action against Zeng. Since the presence of Zeng destroys diversity, remand of this action to state court is therefore appropriate. *See, e.g., Isch v. Northwestern Mutual Life Ins. Co.*, 2000 WL 274193 *3 (N.D. Cal. 2000) (remanding action after finding that plaintiff had sufficiently alleged that agent had made misrepresentations and omissions in insurance application); *Smith v. New England Mutual Life Ins. Co.*, 1998 WL 775124 * 2 (N.D. Cal. 1998) (remanding action after finding that insurance agent had held himself out to the plaintiff as an expert in matters of life insurance and estate planning and had assured plaintiff that he would identify and procure policies with the features plaintiff requested); *Macey*, 220 F.Supp.2d at 1127

1 (finding remand appropriate after recognizing applicability of the "special duty" exception); *Kaighn v. National*
2 *Life of Vermont*, 2003 WL 173863 *1-2 (N.D. Cal. 2003) (same).

**CONCLUSION**

IT IS HEREBY ORDERED THAT Plaintiff's Motion to Remand [Docket No. 8] is GRANTED. The case is hereby REMANDED to the Superior Court for Alameda County. All pending matters are terminated and the clerk is directed to close the file.

IT IS SO ORDERED.

Dated: 7-27-05

SAUNDRA BROWN ARMSTRONG
United States District Judge